Good morning, and welcome to the Ninth Circuit. Judge Thomas and I would like, once again, to welcome Judge Molloy from the United States District Court for the District of Montana, who's sitting with us. We're very grateful for your willingness to come out and help us with our work. Well, thank you so much for having me. Our first case for argument this morning is Freedom Foundation against International Brotherhood of Teamsters Local 117. Mr. Snowball. Well, good morning, Your Honors, and may it please the Court. Timothy Snowball on behalf of the Appellant Freedom Foundation. I would like to reserve two minutes for rebuttal, please. May I just keep an eye on the clock? Will do. Your Honors, the issues I'll discuss today understandably track with the three elements of standing pursuant to Article III. First, the injury, in fact, suffered by the Foundation to its right to freedom of expressive association. Second, the specific issue of causation for Governor Inslee. And third, the specific issue of redressability for Governor Inslee. In terms of the injury, in fact, analysis, Your Honors, again, the constitutional right at issue in this case is the Foundation's right to freedom of expressive association. Now, the First Amendment, for a long time, has been understood to protect the right of those who wish to join together to advance and express shared beliefs, ideas, and goals. This is exemplified in the Jaycees case, even in this circuit, multiple times, so there's no question of that. Nor is there a question of the right of nonprofits like the Foundation to possess associational freedom rights. Again, this is well established. The specific rule pursuant in this case, Your Honors, is that where a state law imposes a serious burden on a group's right of expressive association by impairing or impeding the expressive message. How does your argument fit in with the recent U.S. Supreme Court case, as well as the alliance case, and then the Ninth Circuit case, the Arizona Alliance for Retired Americans? It seems to me that what you're arguing is what's prohibited by the U.S. Supreme Court and the Ninth Circuit. I would respectfully disagree, Your Honor, in terms of, again, just to establish first, the constitutional right at stake is the right of expressive association. I just want to be clear on that, but Your Honor is correct. There is an additional layer of standing analysis that's applicable to organizations like the Freedom Foundation, as Your Honor pointed out. The Arizona case says the statute must directly affect or interfere with an organization's already existing core activities. As far as the Foundation's position goes, we think that this test is even more beneficial to our position than the previous test. As Your Honors know, the previous test was kind of an opaque mission, impairment of mission or diversion of resources. Here, this test is even more concrete and we think goes even more in favor of the Foundation because since 2014, the core activity of the Freedom Foundation has been to effectively facilitate employees opting out of public sector labor unions. That's what we do. And so every other part of the Foundation's work, whether it be educational, whether it be litigation, whether it be anything else, is really in service of this core activity. And we would think that, you know, in terms of the injury here, it's even more clear than the Havens Realty case, which was the case that kind of undergirded the governing standard. In Havens Realty, the educational association in that case, one of their core activities was being able to place people in housing and educate them to that end. So even one of its core activities being affected was sufficient for standing. Here, the core activity of the Foundation is undermined by the mail refusals in this case. It would be akin to a statute, you know, saying that McDonald's can't serve food or drink. I mean, the entire purpose for which the Foundation exists is to facilitate employee opt-outs. And the statute in this case gives the unions the discretion to simply refuse to accept those. And by doing that, it undermines the expressive association for which employees and the Foundation are coming together. That's why the employees— So that may—that helps you with the claim against the unions. But how is that injury related to your claim against the governor? Sure. I think, Your Honor, as you noted, the claim against the governor, whether or not the court allows it to go forward, really has no effect upon the claim against the union in terms of the specific issues of causation and redressability against Governor Inslee. As the court pointed out to the parties, the Hippocratic Medicine case supplies the rule for causation. When a plaintiff is an unregulated party, as the Foundation is in this case causation against a government actor, hinges on the response of a regulated third party. So the regulated third party in this case would be the union. So really, the standard is one of likelihood. The court should look at how likely it is that an injury will occur based upon the actions of the regulated third party to the Foundation. And we think here there's a clear likelihood, near certainty, that the Foundation's going to be injured going forward. Not only do you have a strong record of rejections in this case, you've had 14 batch envelopes of employee opt-outs. But that's the union doing that. What can the governor do about that? Well, the governor is the chief executive of the state. And so certainly, in terms of being tasked with the enforcement of statutes, the enforcement of laws, the governor has direct oversight of the attorney general. Has oversight over PERC, which is the Employer Relations Board in Washington State that would be tasked with an unfair labor practice charge, perhaps, if there had been an allegation of this statute being circumvented somehow. And so the effect of enjoining the governor, then, to get to the point of adjustability, then, would be to enjoin the entire state apparatus under his purview from enforcement of this statute, if, in fact, the court is convinced that the statute is declared unconstitutional. And so take me through, like, what exactly would, if you were to prevail and you got everything you wanted, what would the governor be ordered to do or not do? Sure. I think, in terms, just to quickly take care of this point, I think that the claim against the union, it's important to distinguish between the as-applied challenge against the union and the facial challenge against the governor, to Your Honor's point. I think the injunctive language in this case would read something like this, you know, entering an order permanently enjoining Governor Inslee from enforcing the statute's prohibition on public employees from communicating their payroll preferences regarding union dues directly to their employers, rather than to an applicable union. Really, that's the core of the case, in terms of the burden in this case, is the fact that the statute requires employees, rather than being able to go down and talk to their HR director, like any other deduction from their payroll, they are forced to communicate via mail. They can't call, they can't email, they have to send a letter to the union. And the statute in this case grants the union the discretion to accept or to reject that mail. And so, if we got everything we wanted, if we waved a magic wand and made that happen, I would imagine employees would be able to communicate their preferences directly. So you're saying that this is what, 4156.110.4, that says the employer relies on information provided by the union, and you would have the court, sort of, say, you know, cross out by the exclusive bargaining representative and put in, you know, directly by the employee? And specifically, subpart 3A, Your Honor, I think is the portion that requires the employee to go through the union, correct? If the court is convinced, in fact, that the statute's unconstitutional for interfering with the associational expression of the foundation and employees. And again, this is... So where does it prohibit your association, the statute? So, it's... I mean, it's a facial challenge. You've got to look in all aspects of how it's applied. Sure. I think the standard, Your Honor, is not so much preventing the association in the first instance, it's... But that's your whole case. Well, frustrating the purpose, Your Honor, the purpose for which the association occurs. It would be akin to, perhaps, if I decided with Mr. Prasad to meet in a parking lot because we were going to go perform a public protest of some type and there was a statute that said that we could not use political signs or something, right? I mean, the entire purpose... We're still allowed to meet in the parking lot. The employees are still allowed to reach out to the foundation given our 10 or 20 years of experience to help them opt out. But the entire purpose of that, them doing that, the entire purpose of the expression is the foundation and the employees both believe that the First Amendment protects an employee's right to make their own decision about union deductions. And so... And the statute prohibits you from communicating to the employee directly? Correct, correct. It prohibits... Nothing, right? Pardon me? It doesn't affect your ability... To do what, Your Honor? Communicate with the employees. It doesn't affect our ability to communicate with the employees, but it frustrates the expressive purpose for which the association was formed in the first place. And I think that the two cases that probably supply the closest analogous situation in the rule here are Boy Scouts of America versus Dale. That's at 530 U.S. 640. And also the Hurley case at 515 U.S. 557. Now, both of those cases admittedly deal with private associations that are being asked to have members come in that perhaps frustrate the mission of the organization or somehow affect the expressive part of the organization's mission. But the rule is the same. The rule is one of impairment and burden. This is... I mean, as Judge Thomas pointed out, this is a facial challenge, right? At least insofar as the governor is concerned. As the governor is concerned, right? And the governor says, look, the union is supposed to pass these opt-outs along when they get them. And indeed, it's an unfair labor practice under state law if they don't do that. So we have to ask him, is there any set of circumstances in which this would be constitutional? And it seems like the set of circumstances in which everybody does things the way they're supposed to under state law is a circumstance in which, you know, you would not be injured at all, right? So that seems to be a problem for a facial challenge, doesn't it? I would differ with you, Your Honor, on just one point. I don't think the governor has gone so far as to say that the unions must pass this along. My understanding was the governor has said that there's nothing prohibiting the union from accepting these opt-outs. And so really, I think that discretion gets to the core of the issue here and why we think that the facial challenge would still survive this is the fact that the unions are given discretion under this statute to accept or to reject. And that is an extreme burden on the associational expression of freedom of the Freedom Foundation and employees who join together to be able to try to opt-out and to express their shared message as to what the First Amendment allows or does not allow. And so it's not so much the fact that the union must pass the mail on or must reject the mail, I mean, we can get into that. From our position, it's the discretion that is given to the union presents an inherent burden on the associational expressive freedom of the Freedom Foundation. That's the constitutional injury in this case. And I'll just point out that the union has represented, in terms of at least the causation issue and the likelihood standard, they're going to continue to do this. There's no question that they're going to continue to do this. And there's no real question about why they're doing this. They know that the envelopes with the Freedom Foundation stamp on them contain employee opt-outs. And so there's no real mystery here as to why they're rejecting the mail or whether the mail is going to be rejected into the future. And it's your view that if the union were to say, you know, we know this is an opt-out and we're not going to accept it or look at it because we just don't feel like dealing with employee opt-outs, it's your view that that is consistent with state law, that they're not violating state law in doing that? I think perhaps there could be some kind of unfair labor practice charge, Your Honor. To be honest, I haven't looked at that specific issue of whether or not that would be grounds under Washington law for an unfair labor practice. But I do think, again, that the inherent problem, the constitutional defect in this statute, is the fact that the unions have the discretion to accept or reject mail. And if we take the Janus case at face value, there are serious constitutional implications for them to refuse this mail. Again, the constitutional right at issue is the foundation's right. But again, the foundation is joining with employees who have serious constitutional rights at stake. If the unions can simply refuse this mail, arguably, they can compel employee speech. And that is a serious, serious constitutional problem, not only for the union's actions, but of course for the foundation, you know, who's tasked with helping people effectuate opt-outs pursuant to their constitutional rights. And so, again, it's the discretion issue, Your Honor, that we think is the constitutional defect. Can I ask you to go back and just a very simple question for a simple judge from Montana? What is the relationship between Freedom Foundation and union employees who want to opt out? Do they pay you to do this service? And part of your argument is that you have to spend $14 every time the union rejects the mail. Do they pay the $14, or do you voluntarily pay the $14? I see that my time is running short, but I will answer quickly if I can, Your Honor. I think that in terms of the additional costs, no. The foundation offers all of its services to employees pro bono, so the employees are not financially obligated to pay anything. You are correct. There is an additional harm that occurs for each additional opt-out attempt beyond the first one. There is a specific monetary harm to the foundation on money that otherwise would have been spent on our core activity, which we think satisfies the Arizona test. But to Your Honor's greater point, if I have a First Amendment right to speech, and Your Honor has a First Amendment right to speech, and we join together to express a shared message, then the Constitution, the First Amendment, recognizes an associational speech freedom between the two of us. And that's the relationship that the foundation has with employees. And I'll reserve what time I have left. Thank you. Mr. Ballew. Thank you. Good morning to the Court. May it please the Court. My name is David Ballew, and I'm speaking on behalf of the three Teams for Local Union defendants in this case to request the Court affirm the summary judgment motions the District Court granted to all parties. The Court obviously understands the recent changes in the law to organizational standing, and that's how this case came before the Court. And since this case began, we believe the bar has gotten higher. I understand the plaintiff thinks it's better for them, but I think the Supreme Court and the Ninth Circuit's decisions show otherwise. We talk about core activities. The core activities of the foundation, according to their own complaint, is to—they're dedicated to educating and encouraging employees to essentially withdraw from the union and withdraw their financial support. They're not able to show that those core activities are in any way— those preexisting core activities have been impacted by the state statute. The Court—lower court detailed its methods. It has many ways that they do this. They have a website where people can fill out a card and print it out and send it to themselves. They can check a box, and the plaintiff will send them a self-addressed envelope. They just have to send it in. None of those things are impacted by the statute. Plaintiff's counsel did say the statute requires the use of mail. That is not the case. Mail is not mentioned at all in the statute. It must be in writing. Third-party intermediaries are not mentioned at all in the statute. That's important because it goes to causation, which is another hurdle that the plaintiff cannot surmount in this case. As we know from the Hippocratic Medicine case, the causation is substantially more difficult to establish when, as here, plaintiff is challenging government regulation of someone else. So— I think everything you just said applies to their facial challenge to the statute.  But with respect to their claims against the unions, I understood what they were saying to be— part of our mission is helping employees opt out. We do that. Even before this lawsuit, we were doing that by sending things on behalf of the employees to the unions. If the unions are not going to accept them, doing that mission becomes much more expensive for us. So that seems like, even under Alliance for Retired Americans, that seems like the sort of impairment of pre-existing core activities that's adequate. Sure. And we would characterize that more as a glancing blow to their core activities. What we know from the FDA case is it requires an actual and concrete harm that directly and actually affects their pre-existing core activities. The brief contains an analysis of the small numbers in terms of what this plaintiff does, in terms of what this has done. But it all kind of gets away from the fact that this is a case brought for a constitutional violation. They're alleging state action. And they can talk about those things, about what impact it's had. But the statute, that tie does not directly lead to that. And that's when there are obligations to show a predictable chain of events leading from the government action to the asserted injury. And that we don't have. And the court in the FDA case means you have to avoid speculative links. You can't just—it has to be a direct line. And as I said, the statute itself does not require mail. It does not even address third parties. There's a question of redressability, too, in the court's questions earlier. Address that in terms of what do you want from the governor? Well, it's interesting. What is the foundation seeking from the court for the Teamsters is an order from this court that the Teamsters must open mail from the Freedom Foundation. And that in itself raises the question of compelled speech. The Janus case made clear that freedom of association presupposes a freedom not to associate. So this notion that they're asking if the Teamsters think that these pieces of mail contain revocations, they need to open it. It's— I'm sorry. Are you suggesting that an order compelling the unions to open the mail would violate a First Amendment right that the union has to not open mail? It could in terms of engaging in association with the Freedom Foundation. If the unions decide, we don't see eye to eye, we don't appreciate your view, it indicates there's nothing on the face of this that indicates these are revocation notices. But that would be a defense on the merits, right? I mean, that doesn't really go to whether they have an injury that's redressable, right? Well, it could. But just in terms of redressability, it is a concept that this is what's being requested of the court, and we don't think that's appropriate. There was talk on third-party standing in some of the questions. I think Judge Malloy's questions went to it in terms of in that situation, in addition to injury causation and redress, plaintiffs have been unable to show any kind of special ongoing relationship, which is one of two requirements that the courts have imposed for third-party standing. By their own characterization, their interactions with these individuals, it's a one-and-done relationship. They fill something out on the Internet, run them at the mall, they go door-to-door. There's no fiduciary relationship between them, as courts have often looked to for attorney clients, real estate agents, looking out for people that have a preexisting fiduciary relationship. That's absent here. The other factor is they've made no showing that these individuals are hindered on their own from protecting their own interests. Your Honor brought up Judge Miller, brought up the unfair labor practice potential for the Public Employee Relations Commission. By the way, what is your answer to the question I asked your friend on the other side? Do you think that state law gives you or gives unions the discretion to decide not to open mail if they think it contains an opt-out request? I don't think that comes — that could come down to a state law question of does that decision violate a duty of fair representation that would be adjudicable? That's what my question is, yeah. Yes, that would be adjudicable under Public Employee Relations Commission. Could also be a state law contract claim, and that gets back to this Court's decision in Bell-Gao and Wright, which is important in terms of that. And I guess, would that be a meritorious state law contract claim or unfair labor practice charge? I mean — You know, not necessarily. There would be defenses that could be brought in terms of that because — So you think maybe you do have discretion under state law not to process requests that you get? Well, it's not been addressed under state law because this is under Federal law, and we've been addressing the constitutional implications of that. There's been no issues — there's been — there's not a single employee that's complained about a delay or any revocation. We haven't had any indication that anybody's suffered any injury, so there would be no state law claim without an injury. And — but in terms of their First Amendment freedom of association, it presumes that the employees who are filling out these cards have a constitutional right. They characterize it, they're exercising their constitutional right to terminate union membership. Post-Janus, that might have been an argument in 2017, but in Janus, the Court made clear that an employee's voluntary decision to enter into a written agreement to join and financially support a union does not implicate the Constitution. The Court made clear that by agreeing to pay, employees are waiving their First Amendment rights. And post-Janus, it's clear there's nothing in the state law that compels financial support. There's nothing in a union contract that compels financial support as a condition of employment. These are not agency fees, and the Court made that clear in Belgao and Wright and as addressed in Janus. I know the Court's well familiar with that. I want to point out one thing. In Belgao, this Court was analyzing Washington State Statute 4180.100. That is a statute that applies to employees of the State of Washington. The statute in this case, another Washington statute, RCW 4156.110, that applies to employees of cities and counties. It's the same language, Howard. It's the same language this Court has already interpreted in Belgao. And there's, so as in Belgao, the case involves voluntary agreements that employees entered into with the union, included obligation to pay monthly dues pursuant to those terms. So there's no constitutional claim because there's no state action. And that resolves that. In terms of that, and I think the plaintiff overstates the standard of a likelihood of an injury here. It's causation under the FDA case is much more compelling than that. It has to be a strict line. So with that, does the Court have any other questions? Thank you very much. I appreciate it. Ms. Young. May it please the Court, Alicia Young here for the Governor of the State of Washington. As everyone seems to agree, at this point, the Freedom Foundation lacks Article 3 standing to pursue the rights of state employees who aren't parties to this case. Additionally, the Freedom Foundation lacks standing to pursue its own claim against the governor because the state simply does not restrict or otherwise regulate the foundation's freedom to associate or engage in expressive activities. Nor does it coerce the union into rejecting mail from the Freedom Foundation. So the Freedom Foundation has not shown an injury that is directly traceable to the governor with a state or that could be redressed by any prospective relief against the governor. For similar reasons, Freedom Foundation's claim fails as a matter of law. Should the court reach that question? In any event, summary judgment should be affirmed. I want to emphasize, as this court has recognized, this is a facial challenge to RCW 4156.110 as far as the governor goes. And nothing in that statute restricts or addresses the Freedom Foundation's right to associate or to engage in expressive activity. The Freedom Foundation seems to argue that the statute frustrates their mission or makes it harder to do what they do. That's not a recognizable right under the First Amendment right of association. There's a difference between restrictions on speech and expression and the government's response or lack thereof to being receptive to that speech or association. Here, there are simply no facts that the Freedom Foundation can rely on to show any impairment of their right of expression or association. That highlights a huge problem with this case. There are no employees. There are no declarations from employees. There is no fact suggesting that any employee has been unable to, well, I guess that would be irrelevant anyway because the Freedom Foundation is here in its own accord. I guess to answer your honors question, too, on the union's discretion, I think you're asking about the ability to reject mail and whether that would be a state law violation. It very well could be. It would depend on facts that we don't have here. But certainly— So when you say state law, what are you referring to? An unfair labor practice. Right. You're not talking about the statute that's at issue here. Correct. Correct. And or contractual rights. So both the employees and the unions have entered into contracts with each other. And these are largely questions of contract law as far as how employees can effectively cancel their dues, authorizations, once they've voluntarily agreed to them. If the court— I was just going to—you heard Mr. Snowball describing the sort of order that they would want directed against the governor. Is the governor the right person under state law to grant that, to do all those things? If someone—assuming that it was appropriate for a federal court to order the state to set up a labor law regime of the sort that's being described, is the governor the person who would do that? That's a challenging question to answer just because the relief that the Freedom Foundation has sought in this case and their claims have evolved as the case has progressed. The employer—the governor is the state employer for purposes of collective bargaining. And so rather than name an individual payroll agent of the state, we don't contest that the governor would be appropriate in that capacity. Certainly, the governor is not the payroll agent for cities and counties and other entities of the state. And so again, I guess it would depend on the particular claim, but not necessarily depending on the relief that the Freedom Foundation is ultimately seeking here. We'd ask the court to affirm. Thank you. Thank you. Well, thank you again, Your Honors. I'll move very quickly. I just want to be clear here. We're not asking the court. The court doesn't need to address the merits. The Belgao case and those lines of cases are entirely irrelevant to the questions before the court. We are purely here on an issue of Article III standing. I will point out that my friend on the other side representing the Teamsters did not answer the court's question. Our position based on the record is that they do claim the discretion, clearly based upon their actions and clearly— So where in the statute does it say that they have the discretion? That would be in 3A, Your Honor, the portion that I pointed out before. We think that's the— The word discretion is not in there, is it? The word discretion is not in there, but— So it's all by implication. Correct, Your Honor. So the statute doesn't say restrict it one way or the other, correct? The statute— By the plain words. Correct. And we think that that's part of the problem, Your Honor. I will point out also that— Well, the facial challenge is kind of challenging to you. If the plain words that you're claiming restrict your associational rights aren't in the statute, that's pretty tough to maintain a facial challenge to it. Potentially, Your Honor. I will point out that those cases, the Hippocratic Oath cases and the California cases only apply to the governor, not to my friend from the Teamsters. So those cases being— Right. My question was confined to the governor. I see that I'm out of time. We would ask you to reverse and remand. Thank you. Thank you. We thank all counsel for their arguments and the cases submitted.
judges: THOMAS, MILLER, Molloy